UNITED STATES DISTRICT COURT FOR ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X

LESLIE BARNAVE, MEMORANDUM AND ORDER
                   04 CV 2910 (JG)

      Plaintiff,

   - against -

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

----------------------------------------------------------- X

A P P E A R A N C E S:

  LESLIE BARNAVE
    1242 Norton Drive
    Far Rockaway, New York 11691
    Plaintiff *Pro Se*

  ROSLYNN R. MAUSKOPF
    United States Attorney
    Eastern District of New York
    One Pierrepont Plaza
    147 Pierrepont Street
    Brooklyn, New York 11201
 By: Leslie Ramirez-Fisher
    Special Assistant United States Attorney
    Attorney for Defendant

JOHN GLEESON, United States District Judge:

  Plaintiff Leslie Barnave requests review of a determination by the Commissioner of Social Security ("the Commissioner") that he was not under a disability starting October 29, 1999. The Commissioner moves for judgment on the pleadings. Oral argument was held on February 18, 2005.

This is an unusual case. With respect to the only basis for a finding of disability advanced by Barnave, I agree with the Commissioner. There is substantial evidence supporting her finding that Barnave's physical impairments do not render him disabled. However, looming large over the case is the very real prospect that Barnave suffers from mental or psychiatric impairments that are indeed disabling. On this issue, the Commissioner's adverse decision is difficult to criticize in that Barnave refused to be subjected to a consultative psychiatric examination. However, the finding that Barnave does not suffer from a severe mental impairment is not supported by substantial evidence, and further development of the record is necessary on this issue.

Accordingly, as set forth more fully below, the Commissioner's motion is denied and the case is remanded. Counsel shall be appointed for Barnave to assist him in the proceedings before the Commissioner.

BACKGROUND

Barnave applied for disability insurance and Supplemental Security Income ("SSI") benefits on July 9, 2001, claiming eligibility for benefits since October 29, 1999. His claim was denied initially on September 27, 2001. (Tr. 30.)[1] Barnave requested an administrative hearing, but by letter dated October 7, 2003, he waived his right to appear at the scheduled hearing. (*Id.* at 84.) The Commissioner denied the claim for benefits on December 11, 2003, based on the determination of Administrative Law Judge ("ALJ") Leonard E. Yoswein

---

[1] "Tr." refers to the Certified Administrative Record of the Hearing and all documents submitted to the Social Security Administration.

that Barnave was not under a disability, as defined in the Social Security Act. (*Id*. at 17-24.) The Appeals Council denied Barnave's request for review on June 14, 2003. (*Id.* at 7.)

On June 28, 2004, Barnave filed the instant action requesting review of the denial of his application for benefits. The Commissioner moved for judgment on the pleadings on December 10, 2004. On January 5, 2005 Barnave filed motions to amend his complaint, to compel discovery, and for a preliminary injunction, all related to the discontinuance of certain public benefits by the New York Human Resources Administration. At oral argument, Barnave withdrew those motions. He has since applied to renew those motions by letter dated April 13, 2005, but I decline to allow him to do so. I need not address Barnave's summary judgment motion dated February 17, 2005, which did not come to my attention until after oral argument. That motion is denied as moot in light of my determination to remand the case for further proceedings.

A.    Medical Evidence

    1.    Treating Physicians

The administrative record shows that Barnave was in a car accident on October 29, 1999, sustaining injuries to his head, neck, right shoulder, left knee and back. An MRI performed on November 20, 1999, shows that Barnave had a disc herniation at C3-C4, early disc bulges at C2-C3, C3-C4, C5-C6, and C6-C7, and right-sided neural foraminal narrowing at C5-C6. (Tr. 134.) The record reflects treatment by Dr. Norma Bilbool from November 8, 1999 to June 27, 2001. (*Id.* at 125.) Among her findings, she reported that Barnave had no limitation in sitting and that he could stand or walk for two hours per day. (*Id.*)

3

Barnave was also treated briefly in February of 2003, by Dr. Doantrang Du. (*Id.* at 359-67.) In an evaluation completed on August 4, 2003, Dr. Du found that Barnave could only sit and stand for one hour continuously and remarked that work on a regular basis would cause his condition to deteriorate. (*Id.* at 368-72.) In February of 2003, when Dr. Du treated Barnave, he had prescribed Percocet for pain relief. (*Id.* at 367.)

   2. Consultative Examinations

Barnave was examined consultatively by an internist, Dr. R. Pattamudi (Tr. 241-43), and an orthopedist, Dr. Mandakini Patel (*id.* at 238-40). Based on an examination on July 2, 2001, Dr. Pattamudi diagnosed pain of the lumbosacral spine, arthralgia of the left knee, and obesity. (*Id.* at 242.) She said that Barnave was able to sit, stand, hear and speak, with a mild impairment in walking and traveling and a moderate impairment in lifting, carrying and handling objects. She referred him for an orthopedic consultative examination. Dr. Patel performed the consultative examination on July 16, 2001. She diagnosed lumbosacral radiculitis, which caused a mild to moderate impairment in standing, walking, bending and sitting due to lower back pain. (*Id.* at 239-40.) She concluded that Barnave could perform light work. (*Id.* at 240.)

ALJ Yoswein requested that Barnave be evaluated by an orthopedist on September 19, 2003. Barnave refused to submit to the evaluation. (Tr. 81-82.) Barnave also refused to submit to a psychiatric evaluation. (*Id.* at 22; Barnave Aff'n dated January 21, 2005 at ¶ 30.)

B. The ALJ's Decision

By decision dated December 11, 2004, ALJ Yoswein found that there was no indication that Barnave was engaged in any substantial gainful activity at any time since October

4

29, 1999. Barnave had "extensive cervical and lumbar degenerative disease, with bulging discs and one cervical herniated disc," but did not have any of the impairments listed by the SSA in 20 C.F.R. Part 404, Subpart P, Appendix 1, or any impairments that medically equaled the listed impairments. (*Id.*) Barnave lost on the fourth step of the analysis. The ALJ concluded that Barnave has a severe impairment,

> but retains the residual functional capacity to return to the work he performed in the past. It is therefore unnecessary to consider the remaining step in the sequential evaluation process. Because the claimant retains the residual functional capacity to return to his past work, he is not disabled withing the meaning of the Social Security Act.

(Tr. 23.)

In his lengthy and thorough decision, ALJ Yoswein summarized the evaluations of Dr. Bilbool, Dr. Du and Dr. Patel, and records from New York Hospital and St. John's Episcopal Hospital. He concluded that Dr. Du's evaluative report was not supported by the medical records for Barnave's treatment. He gave considerable weight to Dr. Bilbool's assessment as Barnave's treating physician since it was "consistent with the medical evidence." (*Id.* at 21.)

The ALJ also considered Barnave's claims of pain. He found them "not entirely credible" given the medical evidence in the record. (*Id.*) Specifically, he concluded that "the medical evidence . . . [had] not documented signs and symptoms consistent with the level of severity of pain alleged by Barnave" and the nature of the medical treatment was "not consistent with his allegations of severe and persistent pain." (*Id.*) The ALJ found support for this conclusion in the fact that Barnave had "few treatment sessions through 2002 and 2003." (*Id.*)

5

The evidence that Barnave suffers from mental or psychiatric impairments is strong, despite his steadfast refusal to allege such impairments or cooperate in efforts to evaluate them. The evidence consists principally of records from the Office of Correctional Health Services, a division of the New York City Health and Hospitals Corporation. Barnave was arrested on attempted assault and other charges in December 2000, and he remained in custody until June 2001.[2] The state court ordered a mental competency examination related to those charges pursuant to Article 720 of New York's Criminal Procedure Law. (*See* Tr. 141.)

ALJ Yoswein found that there was no medical evidence to substantiate a conclusion that Barnave had a severe mental impairment. This finding was based on the evidence in the records from Correctional Health Services and Barnave's refusal to submit to a consultative psychiatric evaluation. (*Id.* at 22.)

ALJ Yoswein concluded that Barnave retained the capacity to do light work, which entailed lifting no more than 20 pounds occasionally, lifting no more than 10 pounds on a regular basis, and sitting, standing or walking for up to six hours in an eight-hour day. Barnave could not, however, repeatedly bend, stoop, crawl or crouch. (*Id.* at 22.) Finally, the ALJ found that Barnave's past work as a mortgage processor was sedentary work. (*Id.*) As this finding was sufficient to deny the application for benefits, the ALJ did not perform the last step of the analysis, which asks whether there is other work in the national economy that Barnave could perform.

---

[2] The precise resolution of those charges is not in the record, and no further information is available to the public according to Commissioner's counsel.

DISCUSSION

A.    <u>Standard of Review</u>

I review the Commissioner's decision and the administrative record to determine whether the Commissioner's findings are "supported by substantial evidence" and whether the Commissioner applied the correct legal standard. 42 U.S.C. § 405(g); *Pollard v. Halter,* 377 F.3d 183, 188 (2d. Cir. 2004) (citing *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002)). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales,* 409 U.S. 389, 401 (1971)). Where substantial evidence supports the ALJ's conclusions, this Court will not substitute its own judgment as to the facts. At the same time, "an error of law . . . that might have affected the disposition of the case . . . is grounds for reversal." *Pollard*, 377 F.3d at 189 (internal quotation omitted).

In deciding whether there is substantial evidence to support the Commissioner's findings, I must "first be satisfied that 'the claimant has had a full hearing under the Secretary's regulations and in accordance with the beneficent purposes of the Act.'" *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990) *(*quoting *Echevarria Sec. of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982)). The ALJ who conducts the administrative hearing has an affirmative duty to investigate facts and develop the record where necessary to adequately assess the basis for granting or denying benefits. 20 C.F.R. § 404.900(b) (expressly providing that the social security authorities "conduct the administrative review process in an informal, nonadversary manner"); *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000) ("Social Security proceedings are inquisitorial rather

than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits"). In fact, "[w]here there are gaps in the administrative record," I may remand the case to the Commissioner "for further development of the evidence." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999) (internal quotation omitted).

The Second Circuit, consistent with the regulations, gives the opinion of a treating physician "controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence." *Id* at 78-79 (citations omitted). If the ALJ does not give the treating physician's opinion controlling weight, she must set forth reasons for the weight she ultimately gives the opinion. In making this decision, the ALJ must consider the following factors: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000).

Based on the importance of a treating physician's assessment, the ALJ also has a heightened, affirmative obligation to obtain more than "sparse notes" in the medical records from a treating physician. *Rosa*, 168 F.3d at 79-80. The

> combined force of the treating physician rule and of the duty to conduct a searching review requires that the ALJ make every reasonable effort to obtain not merely the medical records of the treating physician but also a report that sets forth the opinion of that treating physician as to the existence, the nature, and the severity of the claimed disability.

*Brown v. Barnhart*, No. 02 Civ. 4523, 2003 WL 1888727, *8 (S.D.N.Y. Apr. 15, 2003), *citing Jones v. Apfel*, 66 F. Supp. 2d 518, 538-39 (S.D.N.Y. 1999). Moreover, even where the ALJ obtains an assessment from the treating physician(s), the ALJ's duty in this respect is not

8

necessarily discharged. If those findings are deemed conclusory or unsupported by specific clinical findings, the ALJ should obtain a more detailed explanation of the physician's finding of disability. *Cruz*, 912 F.2d at 12.

B. <u>Steps for Disability Determination</u>

"To receive federal disability benefits, an applicant must be 'disabled' within the meaning of the Social Security Act." *Shaw*, 221 F.3d at 131; *see also* 42 U.S.C. § 423(a), (d). A claimant is "disabled" within the meaning of the Act when he can show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be of "such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* at § 423(d)(2)(A).

A five-step analysis is used to determine whether a claimant is "disabled" under the Act. *Shaw*, 221 F.3d at 132 (citing the five steps with approval); *Curry v. Apfel,* 209 F.3d 117, 122 (2d Cir. 2000) (same). First, the claimant must not currently be engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must show a "severe impairment" which significantly limits his or her mental or physical ability to do basic work activities. *Id.* at § 404.1520(c). Third, if the claimant suffers from an impairment listed in Appendix 1 of the regulations (or an impairment that is equivalent to a listed impairment), the Commissioner will automatically consider him disabled. *Id.* at § 404.1520(d), (e). Fourth, if the impairment is not listed (or equivalent to a listed impairment), the claimant must show that he

has no residual functional capacity to perform his past work. *Id.* at § 404.1520(f). Fifth, if the claimant makes that showing, the Commissioner must determine if there is other work in the national economy that the claimant could perform. *Id.* at § 404.1520(g). The claimant has the burden of proving the first four steps; the Commissioner bears the burden of proof on the last step. *Shaw*, 221 F.3d at 132.

In making the required determinations, the Commissioner must consider (1) the objective medical facts; (2) the medical opinions of the examining or treating physicians; (3) the subjective evidence of the claimant's symptoms submitted by the claimant, his family, and others; and (4) the claimant's educational background, age, and work experience. *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983) (citations omitted). As the Second Circuit "has long recognized, the combined effect of a claimant's impairments must be considered in determining disability [and] the [Social Security Administration] must evaluate their combined impact on a claimant's ability to work, regardless of whether every impairment is severe." *Dixon v. Shalala*, 54 F.3d 1019, 1031 (2d Cir. 1995); *see, e.g.*, *De Leon v. Sec'y of Health & Human Servs.*, 734 F.2d 930, 937 (2d Cir. 1984).

C.  Barnave's Case

The Commissioner, in her motion for judgment on the pleadings, argues that while Barnave's impairments are severe, they did not impair his residual functional capacity to perform his previous work of mortgage processing. I find that the Commissioner's decision with respect to Barnave's claim of physical disability is supported by substantial evidence. However, her finding that there is no medical evidence to substantiate a severe mental or psychiatric impairment is not supported by substantial evidence.

10

1. Physical disability

First, there is substantial evidence to support Dr. Bilbool's conclusion that Barnave can sit for 6 hours in an 8 hour day. As noted by both Barnave's physicians and by the ALJ, the cause of his pain is a cervical disc herniation and disc bulges. This condition may be consistent with the ability to sit for six hours in the course of an eight-hour day, as well as the ability to lift 10 pounds on a regular basis. Dr. Bilbool also found that Barnave's condition does cause him some limitations, for example, in standing and walking, in pushing or pulling, and in repetitive bending or stooping. Additionally, the medical report she completed lists Barnave's medical history, medical tests, medications and diagnoses. (Tr. 125-31.) I cannot conclude that her evaluation and the records are conclusory or unsupported.

Second, the ALJ's conclusion that Dr. Du's findings are inconsistent with the medical evidence is supported by substantial evidence. Although Dr. Du completed a medical report on Barnave's behalf, he had only treated Barnave twice, eight days apart. (*Id.* at 368.) This is in contrast to Dr. Bilbool, who treated Barnave for approximately one year and nine months. Moreover, Dr. Du reported that Barnave declined to be examined on the day Dr. Du completed the form, and that he "declined to have any major studies." (*Id.* at 368.) When Barnave was examined by Dr. Du, as the ALJ noted, Dr. Du found that he had "a slight limp, normal muscle strength, normal sensory responses, and negative straight let raising." (*Id.* at 21.) Finally, the ALJ also noted that Barnave, in a written statement, wrote that he did not consider Dr. Du to be his primary care physician.

Third, in the consultative examinations that Barnave submitted to in July of 2001, he was diagnosed with lumbosacral radiculitis. Dr. Pattamudi nonetheless found that Barnave

11

was able to sit and stand, and Dr. Patel, an orthopedist, found that Barnave had a mild to moderate impairment in sitting, standing and walking. Dr. Patel concluded that Barnave was able to perform light work, which is consistent with the ALJ's conclusion.

Fourth, the ALJ considered the credibility of Barnave's statements regarding his symptoms and his pain and concluded that they were not entirely credible. In making her disability determination, the Commissioner must consider subjective evidence of pain or disability testified to by the claimant. *See* 20 C.F.R. § 404.1529(a). However, "[s]tatements about a claimant's pain cannot alone establish disability; there must be medical evidence that shows that the claimant has a medically determinable impairment that could reasonably be expected to produce the pain or other symptoms alleged." *Davis v. Massanari*, No. 00 Civ. 4330, 2001 WL 1524495, at *6 (S.D.N.Y. Nov. 29, 2001) (citing, *e.g.*, 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1529(a)).

Seven factors must be considered in evaluating a claimant's subjective complaints: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual received or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for fifteen to twenty minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). If the ALJ's decision not

to credit plaintiff's subjective complaints of pain is supported by substantial evidence, I must respect that determination, *Aronis v. Barnhart*, No. 02 Civ. 7660, 2003 WL 22953167, at *7 (citing *Aponte v. Secretary, Dep't of Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984), as long as the ALJ sets forth his or her reasons with "sufficient specificity to enable [the district court] to decide whether the determination is supported by substantial evidence," *Miller v. Barnhart*, No. 02 Civ. 2777, 2003 WL 749374, at *7 (S.D.N.Y. Mar. 4, 2003) (quotations and citation omitted).

In finding Barnave's testimony "not entirely credible," ALJ Yoswein noted (1) a lack of documentation of signs and symptoms consistent with the level of severity of pain alleged by Barnave; (2) the fact that corrective surgery or extensive medical intervention was not required; (3) the paucity of medical treatment required during 2002 and 2003; and (4) the fact that Barnave was a college student and regularly attended class. (Tr. 20-21.) Substantial evidence supports the first three reasons. The Commissioner concedes that the ALJ was mistaken with respect to his conclusion that Barnave was a college student during the relevant period. (Def. Letter dated Jan. 5, 2005, at 2.)

In many physical examinations over the course of the relevant period, Barnave exhibited full ranges of motion as well as normal muscle strength. (*See* Tr. 126, 130-31, 156, 172, 210, 352, 366.) Moreover, he did not receive extensive treatment for his pain. He was treated with physical therapy and a brace, as opposed to surgical intervention. (*Id.* at 139, 235, 299-303, 337-38.) In fact, he stated that he was able to manage his pain with marijuana, and refused to be seen at a pain clinic. (*Id.* at 352.)

Finally, Barnave's appearance in Court for oral argument on February 18, 2005, confirmed the ALJ's finding. Barnave appeared with a neck brace and a large molded plastic back brace that he wore outside his clothing. While waiting for the case to be called, he lay down in the hallway outside the courtroom. When the case was called, he moved very slowly and gave the appearance of being in acute pain at even the slightest movement. However, as he argued against the Commissioner, he became animated, standing up and gesticulating with his arms for emphasis. In short, Barnave either experienced a near-miraculous physical benefit from arguing or he was grossly exaggerating his limitations during his appearance before me. I strongly suspect it was the latter, and therefore I defer to the ALJ's credibility finding where, as here, there is substantial evidence to support it.

Based on all the evidence in the record, I find that the ALJ's conclusion that Barnave retained the residual functional capacity to perform his previous work as a mortgage processor is supported by substantial evidence.

2. Mental or Psychiatric Impairment

ALJ Yoswein was in a difficult position in determining whether Barnave was under a mental or psychiatric disability. As he noted, "the medical record, and the correspondence provided by [Barnave], both suggest that there may be a psychiatric component to [his] condition." (Tr. 22.) However, Barnave adamantly insisted, and continues to insist, that he does not suffer from any mental or psychiatric impairments. ALJ Yoswein ultimately concluded that "objective medical evidence, including tests, examinations and laboratory findings," are required for such a disability finding and could not be obtained with respect to

Barnave, who therefore could not "be considered to have a severe mental impairment." (*Id.*) I disagree.

As mentioned by the ALJ, in his function report, Barnave reported: "I cannot endure stress; I must plan schedules, dislike changes." (*Id.* at 123.) There is limited medical evidence supporting a mental disability in this case, especially because Barnave refused to cooperate with consultative psychiatric appointment attempts. (*Id.* at 268.) However, Barnave underwent significant psychiatric examination during his incarceration from December 2000 through June 2001. Those examinations resulted in a possible finding of delusional disorder.

Specifically, Barnave was first referred for a psychiatric evaluation on January 22, 2001, and he refused to cooperate. (*Id.* at 192.) Several mental health referrals were made in the next four months, with Barnave refusing some of the evaluations and/or treatment that were recommended. (*See id.* at 164, 165-66, 202-03.) In May 2001, pursuant to a court-ordered psychiatric evaluation to determine if Barnave was competent to stand trial, the mental health unit in the correctional facility diagnosed him with adjustment disorder. (*Id.* at 159.) He was also found to have poor insight and judgment. (*Id.*) The psychiatric unit decided to follow him until he was taken to Kings County Hospital for his competency evaluation. (*Id.*) Another evaluation four days later found that Barnave had paranoid ideation with self-focus and grandiosity. (Tr. 157.)

From May 8, 2001 to May 24, 2001, Barnave was in Kings County Hospital pursuant to the court-ordered psychiatric evaluation. (*Id.* at 184-86, 200-01, 204.) The record contains only a discharge summary from Barnave's time at Kings County. (*See id.* at 200-05.) During that time, the physician found that Barnave appeared to have a complex delusion. It is

15

unclear from the record whether he was diagnosed with delusional disorder. (*See id*. at 154, 204.) However, the physician's mental status report at the end of the 16-day stay stated, *inter alia*, that Barnave was "quietly delusional." (*Id.* at 201.) He prescribed Zyprexa, a second generation anti-psychotic medication utilized for the treatment of schizophrenia. Barnave refused the medication. (*Id*. at 154.)

On May 30, 2001, upon his return to the correctional facility from Kings County Hospital, Barnave was evaluated by Dr. Anna Rossi. (Tr. 141-50.) She found that Barnave's judgment was mildly to severely impaired, that his impulse control ranged from moderate to poor, and that he refused to allow for a meaningful interview, instead engaging in overtly hostile and abusive behavior. She gave him a Global Assessment of Functioning score, which ranges from 0 to 100, of 65 in the past, signifying mild symptoms, and 60 currently, signifying moderate symptoms.

An assessment by Mental Health Specialist Robert Matzell on May 30, 2001, further reported Barnave's hostility and uncooperativeness (at the outset of the interview) and continued delusions for which Barnave refused to take prescribed medication. (*Id.* at 148-49.) Barnave was unable to sign the patient's statement of involvement in the treatment plan because he was in restraints. (*Id.* at 150.)

Based on this evidence, I find that ALJ Yoswein's conclusion that Barnave cannot be considered to have a severe mental impairment because of lack of medical evidence is not supported by substantial evidence. There is ample evidence in the 91-page record obtained from the correctional authorities that Barnave suffers from a mental impairment or impairments that produce non-exertional limitations on his ability to work.

16

The ALJ's rejection of Barnave's claim for benefits on this ground was based largely on the absence of a complete psychiatric assessment, a deficiency that exists because Barnave adamantly refuses even to visit a consultative examiner who would provide such an assessment. (Tr. 22.) That outcome, while understandable, is inconsistent with the beneficent goals of the program administered by the Commission. Especially where the claimant's uncooperativeness arises in the context of an apparent mental impairment, a greater effort to develop the record is necessary before the ALJ can properly close the door to benefits.

D.   Remedy

As noted above, the ALJ has an affirmative duty to develop the record on behalf of the applicant. "Where there are gaps in the administrative record or the ALJ has applied an improper legal standard," I may remand the case to the Commissioner "for further development of the evidence." *Rosa*, 168 F.3d at 78-79. (internal quotation omitted). I find that further development of the evidence is necessary because the record lacks an adequate psychiatric assessment. I understand that ALJ Yoswein denied Barnave's claim, in part, because of Barnave's failure to cooperate with psychiatric consultative examinations. In an effort to surmount that problem on remand, I will appoint counsel to represent Barnave in the proceedings before the Commissioner. Counsel will recognize, even if Barnave does not, that if Barnave

continues to be uncooperative with the Commissioner's attempts to gather evidence with respect to a mental impairment, the ALJ may properly deny the claim for benefits on remand.

## CONCLUSION

For the foregoing reasons, I deny the Commissioner's motion for judgment on the pleadings and remand the case to the Commissioner for further proceedings consistent with this opinion.

So Ordered.

JOHN GLEESON, U.S.D.J.

Dated: May 13, 2005
      Brooklyn, New York